IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROY L. PERRY-BEY, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) 1:23-cv-1165 (LMB/IDD) |
| DONALD JOHN TRUMP, et al., | ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OPINION

Before the Court are nineteen (19) motions filed by the named parties and a proposed intervenor in this litigation brought by pro se plaintiffs Roy L. Perry-Bey and Carlos A. Howard ("plaintiffs") who are attempting to disqualify Donald John Trump, the former President of the United States ("former President Trump"), from being placed on the Virginia ballot during the upcoming presidential election. Plaintiffs have styled their claims under Section 3 of the Fourteenth Amendment of the United States Constitution and Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 et seq., [Dkt. No. 10] at ¶ 5 ("Second Amended Complaint"), alleging that former President Trump "engaged in insurrection or rebellion against" the United States Constitution and is therefore "disable[ed]" from seeking the office he once occupied. Plaintiffs seek sweeping relief, including a declaratory judgment that 1) the "Virginia State Board of Elections and Virginia Department of Elections[1] make a determination . . . that [former President Trump] is barred from seeking the Office of the President of the United States and . . . from participating in the 2024 Presidential Primary . . . in Virginia"; 2) that the Commonwealth

---

[1] Plaintiffs have named former President Trump and both the "Virginia Department of Elections" and "Virginia State Board of Elections" (collectively, the "Commonwealth defendants") as defendants in this civil action.

defendants' failure to act "has discriminatory purpose or effect that unlawfully deprives Petitioners African American citizens [sic] right to participate equally in elections"; 3) that enjoins "Trump's participation in any future elections for public office"; 4) that "remov[es] Donald John Trump's name appearing on the general elections [sic] ballot"; and 5) that the Commonwealth defendants "shall not implement or utilize any practice . . . that results in the deprivation of Petitioners African Americans [sic] participation in the electoral process." [Dkt. No. 10] at 13-15.

Although this increasingly litigated legal question of whether former President Trump may be disqualified from running for or serving in public office raises issues of the utmost importance in our democratic system of self-governance,[2] the Court cannot reach the merits of plaintiffs' claims because it lacks subject-matter jurisdiction. Accordingly, defendants' motions to dismiss will be granted and the Second Amended Complaint will be dismissed.

I.

Before turning to the jurisdictional analysis, the procedural deficiencies that have plagued the pro se plaintiffs' prosecution of this civil action must be discussed. Plaintiffs have continuously flouted procedural requirements in their filings and misled the Court as to their ability to respond to defendants' dispositive motions. To start, plaintiff Perry-Bey filed twenty-two (22) motions, notices, letters, and responses that only he has signed. See, e.g., [Dkt. Nos. 15, 17, 19, 20, 30, 35, 42, 43, 45, 46, 54, 56, 60, 61, 62, 63, 70, 71, 75, 78, 79, 84]; cf. [Dkt. No. 83] (filing signed only by plaintiff Howard). Plaintiff Perry-Bey, proceeding pro se, is not an

---

[2] Across the country, courts are faced with questions ranging from whether Section 3 applies to a political party's primary election to whether the provision's prohibition is self-executing, and whether the President is an officer of the United States to what type of conduct constitutes "engag[ing] in insurrection or rebellion against the [Constitution], or giv[ing] aid or comfort to the enemies thereof." Accord Castro v. Scanlan, 86 F.4th 947, 949 (1st Cir. 2023) (Barron, C.J.).

attorney and has been warned that he may not represent plaintiff Howard in this civil action; therefore, plaintiffs' filings fail to comply with Federal Rule of Civil Procedure 11(a), which requires written pleadings be signed "by a party personally if the party is unrepresented." Moreover, plaintiff Perry-Bey has not included his email address and telephone number on his filings, as required by Rule 11(a)—an omission that prevents defendants from communicating with him in a timely manner to resolve issues without involvement of the Court.[3] Despite the flexibility with which the Court may allow pro se parties to proceed in federal court, procedural safeguards are more than mere formality, and plaintiffs have repeatedly failed to comply, despite communication from the Clerk of the Court and defense counsel, according to the latter's representations. See also Fed. R. Civ. P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the [ ] party's attention.").

More troubling is plaintiffs' representation that they were unable to file timely oppositions to defendants' motions to dismiss, [Dkt. Nos. 26, 31], because they were "under doctors [sic] care and needs [sic] additional time due to debilitating depression making it more difficult to prepare an effective response," [Dkt. No. 35] at 1 ("Plaintiffs [sic] suffering from PTSD challenges is [sic] currently under mental health care and is without counsel and inability [sic] to concentrate making it more difficult to prepare or respond."). Based on this representation, the Court granted plaintiffs a 45-day extension, up to and including December 22, 2023, to file oppositions to defendants' motions to dismiss. [Dkt. No. 37] ("November 7, 2023 Order"). Since that time, plaintiffs have filed fifteen (15) new motions, responses, notices, and letters—some of which are voluminous, and all of which raise issues distinct from those in

---

[3] Plaintiff Howard has included his email address and telephone number in his filings and on the docket sheet in this civil action.

defendants' motions to dismiss. See [Dkt. No. 45] ("Motion to Dismiss Republican Party of Virginia"); [Dkt. No. 46] ("Plaintiff's [sic] Notice of Page Correction"); [Dkt. No. 54] ("Motion for Joiner of Parties in Support of Amended Complaint"); [Dkt. No. 56] ("Motion to Strike"); [Dkt. No. 60] ("Emergency Motion to Stay Proceedings"); [Dkt. No. 61] ("Motion to Dismiss Notice of Hearing"); [Dkt. No. 62] ("Motion to Dismiss Notice of Hearing"); [Dkt. No. 63] ("Emergency Motion to Stay Proceedings"); [Dkt. No. 70] ("Judicial Notice in Support of Emergency"); [Dkt. No. 71] ("Motion to Strike"); [Dkt. No. 75] ("Motion for Temporary or Preliminary Injunction to Remove Donald J. Trump"); [Dkt. No. 78] ("Motion to Strike Defendant Donald John Trump"); [Dkt. No. 79] ("Motion for Appointment of Counsel"); [Dkt. No. 83] ("Motion for Appointment of Counsel"); [Dkt. No. 84] ("Motion for Temporary or Preliminary Injunction to Remove Donald J. Trump").[4] These filings establish that plaintiffs were, in fact, capable of responding to defendants' dispositive motions. Their misrepresentation is further evinced by plaintiffs' last-minute motions for appointment of counsel, filed the day before their oppositions to defendants' motions to dismiss were due. See [Dkt. Nos. 79, 83] ("Plaintiff is without counsel and unable to dedicate the time and attention required to properly litigate the complex nature of their claims due to health reasons and financial hardship.").[5] On December 22, 2023, plaintiffs filed a 314-page "Consolidated Reply in Opposition to

---

[4] Some of plaintiffs' filings repeatedly request to amend their Second Amended Complaint; however, the Court stated several times that no further amendments would be permitted given the risk of prejudice to defendants. See [Dkt. No. 44] ("Because plaintiffs have been given ample opportunity to correct defects in their initial pleadings, and because the Court has granted plaintiffs additional time to respond to defendants' Motions to Dismiss, any further delay or amendment would prove prejudicial to the opposing parties." (citing Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013)).

[5] Plaintiffs have improperly requested the Court to appoint them counsel under 28 U.S.C. § 1915, which applies only to pro se indigent prisoners as prescribed by the Prison Litigation Reform Act.

Defendants' Motion [sic] to Dismiss and Memorandum in Support." [Dkt. No. 87]. That filing contains a grab bag of legal citations and arguments, many of which appear to be copied from state court filings involving the litigation of former President Trump's ballot access, see, e.g., [Dkt. No. 87] at 20, 87, and as explained below, do not cure the jurisdictional defects in plaintiffs' Second Amended Complaint.

Lastly, on December 4, 2023, plaintiff Perry-Bey filed an "Emergency Motion to Stay Proceedings," [Dkt. No. 60], on behalf of both plaintiffs, again not signed by plaintiff Howard, in which they ask "for an order staying further proceedings in this action pending resolution by the Supreme Court of Colorado" in Anderson v. Griswold, Case No. 23SA300. Plaintiff Perry-Bey claims he and plaintiff Howard "will suffer substantial hardship if they are required to litigate this case issues [sic] which the Supreme Court is currently reviewing in Norma Anderson [sic]." [Dkt. No. 60] at 3. The motion argues that "[i]f a stay is not issued, and the [p]laintiffs' are compelled to proceed defending the case, inequity will result." Id. at 11. This motion fails for two reasons. First, it completely inverts the posture of this proceeding—no one is "requiring" plaintiffs to litigate this civil action, it is plaintiffs themselves who decided to bring suit—they are only being required to respond to defendants' properly filed motions and to comply with Court orders and the Federal Rules of Civil Procedure, the Local Rules of this Court, and federal law. As the Court has explained to plaintiffs in a previous Order, "[i]f plaintiffs are unable to litigate their claims at this time, they may voluntarily dismiss this civil action and refile . . . when they are prepared or when they are able to retain adequate counsel." [Dkt. No. 44] at 2. Second, despite the Supreme Court of Colorado ruling that former President Trump may not be placed on the Colorado presidential election ballot in 2024 pursuant to Section 3 of the Fourteenth

Amendment, that civil action does not involve the Article III jurisdictional defects that plague this civil action.[6]

Plaintiffs' reliance on state court decisions either keeping former President Trump off the presidential election ballot—or refusing to do so—are inapposite, because the well-reported cases and events in Colorado, Michigan, Maine, California, and elsewhere have involved the interpretation of state election law by a competent state court or determinations made by secretaries of state tasked with ensuring free and fair elections. As explained below, plaintiffs' attempt to achieve a result similar to that in Colorado cannot occur in this Court because of the nature of their direct federal constitutional claims and because of the constraints imposed by Article III that limit the jurisdiction of federal courts.

II.

In their motions to dismiss, defendants raise multiple grounds for dismissal,[7] one of which is plaintiffs' lack of standing under Article III of the federal Constitution. Standing is a

---

[6] The opinion of the Supreme Court of Colorado in Anderson v. Griswold, 2023 CO 63, is available at www.courts.state.co.us/userfiles/file/Court_Probation/Supreme_Court/Opinions/2023/23SA300.pdf. The Colorado Republican State Central Committee has filed a motion to expedite the briefing on the petitions for a writ of certiorari before the United States Supreme Court, available at https://www.supremecourt.gov/DocketPDF/23/23-696/294453/20231228124722255_20231228%20Anderson%20Resp%20Motion%20to%20Expedite.pdf.

[7] In his Motion to Dismiss, defendant former President Trump argues that plaintiffs lack standing; that plaintiffs' claims present nonjusticiable political questions; that Section 3 of the Fourteenth Amendment is not self-executing; that the Commonwealth defendants do not have authority to assess presidential qualifications; that Section 3 of the Fourteenth Amendment does not apply to the President; that former President Trump did not engage in insurrection; that plaintiffs' claims are not ripe; and that plaintiffs failed to properly serve former President Trump. See [Dkt. No. 27]. In the Commonwealth defendants' Motion to Dismiss, they argue that sovereign immunity bars plaintiffs' suit; that plaintiffs lack standing; that plaintiffs' claims are not ripe; that plaintiffs misconstrue how presidential primary elections operate in Virginia and thus cannot sustain a cause of action; that plaintiffs fail to state a claim under the Voting Rights Act; and that the Fourteenth Amendment does not prevent former President Trump from running for office but merely from "holding" office. See [Dkt. No. 32]. Because the issue of standing

6

jurisdictional prerequisite and "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citing Allen v. Wright, 468 U.S. 737, 751 (1984)); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case."). In the absence of standing, "federal courts are prohibited from issuing advisory opinions." Shenandoah Valley Network v. Capka, 669 F.3d 194, 201 (4th Cir. 2012) (citing Flast v. Cohen, 392 U.S. 83, 96 (1968)).

Standing under Article III requires plaintiffs to allege: 1) an "injury in fact"; 2) a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable" to the defendants' actions; and 3) a likelihood that the injury "will be redressed by a favorable decision." Benham v. City of Charlotte, 635 F.3d 129, 134 (4th Cir. 2011) (quoting Lujan, 555 U.S. at 560-61). "A generalized interest of all citizens in constitutional governance does not suffice to confer standing on one such citizen." Sibley v. Obama, 866 F. Supp. 2d 17, 20 (D.D.C. 2012) (citing Drake v. Obama, 664 F.3d 774, 779 (9th Cir. 2011); accord Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 217 (1974)). Plaintiffs must show they have a "personal stake" in the alleged dispute and that the injury is "particularized" to them. Id. (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997) ("We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him.")). The burden of proof is on the party invoking a district court's subject-matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

---

under Article III entirely resolves both motions to dismiss, the Court need not, and will not, reach defendants' other arguments.

Importantly, the United States Supreme Court has refused to recognize generalized grievances against alleged illegal or improper government conduct as sufficient to establish standing in federal court. "[E]ven in a proceeding which he prosecutes for the benefit of the public . . . [each plaintiff] must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens." Lance v. Coffman, 549 U.S. 437, 440 (2007) (quoting Tyler v. Judges of Court of Registration, 179 U.S. 405, 406 (1900)); see also Perry-Bey v. City of Norfolk, 678 F. Supp. 2d 348, 361 (E.D. Va. 2009) (collecting cases).

Here, plaintiffs have not sufficiently pleaded allegations indicating that they have standing to assert their claims against defendants arising under either Section 3 of the Fourteenth Amendment or Section 2 of the Voting Rights Act, as the injuries alleged are not particularized to plaintiffs and not traceable to defendants' ostensible conduct. Plaintiffs merely allege that they are "members of a minority group and their right to vote has been abridged . . . due to Trump's filing a statement of candidacy to participate in the 2024 Presidential Primary." [Dkt. No. 10] at 1. Plaintiffs further allege that, as "African American registered voters" in Virginia who have "cast their vote[s] for both Democratic [sic] and Republican" candidates, "they have a 'personal stake' in the dispute and that they are being denied the right to participate equally in elections and elect representatives of their choice." Id. at 3. Somewhat summarily, plaintiffs also allege that their "right to vote has been abridged" and they have been "denied the right to participate equally in elections . . . based on their race or color by election officials [sic] omission to perform a required duty," which they describe as removing former President Trump from the presidential ballot in Virginia.[8] Id. Ultimately, plaintiffs allege nothing more than a

---

[8] The Second Amendment Complaint is often inconsistent as to the relief sought. For example, it is unclear whether plaintiffs are asking the Court to bar former President Trump from the 2024

8

"generalized grievance," in that, as Virginia voters, they are subject to no more of an injury than any other registered voter in the Commonwealth. Moreover, while plaintiffs assert a violation of Section 2 of the Voting Rights Act, they allege no facts to support this assertion, and they identify no means by which they or any other Virginia voters are injured by former President Trump's presence on the primary ballot, aside from the bare, conclusory assertion in the Second Amended Complaint. Cf. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

Federal courts across the country have consistently held that individual citizens do not have Article III standing to challenge whether another citizen is qualified to hold public office. See, e.g., Kerchner v. Obama, 612 F.3d 204, 207 (3d Cir. 2010); Berg v. Obama, 586 F.3d 234, 239 (3d Cir. 2009) (holding that a pro se plaintiff lacked Article III standing to challenge then-Senator Barack Obama's eligibility to run for and serve as President); Hollander v. McCain, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (holding that plaintiff "does not have standing based on the harm he would suffer should McCain be elected President despite his alleged lack of eligibility under Art. II, § 1, cl. 4."); Schaefer v. United States, 2023 WL 6798507, at *2 (S.D. Cal. Oct. 13, 2023) ("[A]s a voter, Plaintiff has no greater stake in this lawsuit than any other United States citizen." (cleaned up)); Booth v. Cruz, 2016 WL 403153, at *2 (D.N.H. Jan. 20, 2016), report and recommendation adopted, 2016 WL 409698, at *1 (D.N.H. Feb. 2, 2016) ("[A]n individual voter challenging the eligibility of a candidate for President lacks standing to assert a claim based on the general interests of the voting public." (citation omitted)); Const. Ass'n Inc. ex rel. Rombach v. Harris, 2021 WL 4442870, at *2 (S.D. Cal. Sept. 28, 2021), aff'd, 2023 WL 418639, at *1 (9th Cir. Jan. 26, 2023) (finding that plaintiffs challenging Vice President Kamala Harris's

---

Virginia Republican primary ballot or only the subsequent general election ballot. See, e.g., [Dkt. No. 10] at 13-15.

9

candidacy failed to "adequately allege Article III standing"); Fischer v. Cruz, 2016 WL 1383493, at *2 (E.D.N.Y. Apr. 7, 2016) ("Plaintiff's allegation that Senator Cruz's presence on the ballot will somehow damage his rights as a voter does not constitute a sufficiently particularized injury to establish standing under Article III."); Drake v. Obama, 664 F.3d 774, 778, 780-84 (9th Cir. 2011) (holding that a group of military personnel, state representatives, political candidates, and individual citizens did not have standing to challenge President Obama's eligibility to hold office); Chapman v. Obama, 719 Fed. App'x 13 (D.C. Cir. 2018) (per curiam) ("The district court correctly concluded that appellant lacked standing to challenge President Barack Obama's qualifications for holding office.").

In Schaefer v. United States, the United States District Court for the Southern District of California rejected a pro se plaintiff's request for declaratory relief seeking to bar defendant former President Trump from standing as a candidate for President of the United States pursuant to Section 3 of the Fourteenth Amendment. The court found that plaintiff's complaint failed to allege facts sufficient to establish a particularized injury, and that plaintiff, "acting as an individual voter," may not "demand that his 2024 [presidential] ballot contain only candidates eligible to serve if elected." 2023 WL 6798507, at *2 (S.D. Cal. Oct. 13, 2023). Finding that the plaintiff did not have Article III standing, the court explained that plaintiff was "seeking relief that no more directly and tangibly benefits him than it does the public at large." Id.

Similarly, in Castro v. Scanlan, a unanimous panel of the United States Court of Appeals for the First Circuit affirmed the decision of the lower court, which dismissed a complaint brought by an individual who intended to run in the New Hampshire Republican presidential primary for lack of standing. 86 F.4th 947, 949 (1st Cir. 2023). In its decision, the First Circuit reasoned: "any claim that the former President's presence on the ballot in the contest at issue will

diminish [plaintiff's] votes or contributions is simply too speculative to credit, even allowing for the probabilistic nature of a claim of competitive injury." Id. at 960-61 (Barron, C.J.); see also id. at 955 ("Th[e] limitation on the judicial power prevents a plaintiff from invoking Article III jurisdiction of a federal court by asserting what is merely a "general interest common to all members of the public." (quoting Carney v. Adams, 141 S. Ct. 493, 499 (2020))).

At least five additional federal courts have concluded that citizens attempting to disqualify individuals—including former President Trump—from participating in elections or from holding public office based on the January 6, 2021 attack on the United States Capitol lacked standing. See, e.g., Stencil v. Johnson, 605 F. Supp. 3d 1109 (E.D. Wis. 2022). In Stencil, the plaintiffs sought a declaratory judgment that three members of Wisconsin's congressional delegation were ineligible to serve under the Fourteenth Amendment because their participation in the January 6 attack constituted an insurrection against the United States. Id. at 1112-13. The court determined that the plaintiffs lacked standing and explained that "[e]very citizen and voter could claim to have suffered the same injury as the plaintiffs here, which amounts to nothing more than engaging in political advocacy against candidates for office or issue advocacy against the views the candidates hold. The relief that the plaintiffs seek would no more directly and tangibly benefit them than it would the public at large." Id. at 1117; see also Hill v. Mastriano, 2022 WL 16707073, at *1 (3d Cir. Nov. 4, 2022) (holding that a plaintiff seeking a declaratory judgment disqualifying defendant from running for governor based on his actions on January 6, 2021 lacked standing); Caplan v. Trump, 2023 WL 6627515, at * 2 (S.D. Fla. Aug. 31, 2023) (dismissing plaintiff's Section 3 challenge to former President Trump's ballot access for want of standing); Castro v. Trump, 2023 WL 7093129, at *1 (S.D. Fla. June

11

26, 2023) (dismissing plaintiff's complaint for lack of Article III standing and ripeness); Castro v. Amore, 2023 WL 8191835, at *1 (D.R.I. Nov. 27, 2023) (similar).

Here, plaintiffs have totally failed to demonstrate how their alleged injuries are traceable to the conduct of defendants. Although plaintiffs assert that "their right to vote has been abridged on account of their race or color," [Dkt. No. 10] at 1, their Second Amended Complaint fails to identify any causal mechanism linking their alleged injury to a specific candidate's name appearing on a primary or general election ballot. "[I]nclusion [of a candidate's name] on the ballot does not affect [plaintiffs'] ability to vote for [their] preferred candidate." Fischer, 2016 WL 1383493, at * 3; see also Hollander, 566 F. Supp. 2d at 68 ("[V]oters are empowered to address that concern on their own by voting for a different presidential candidate, whole eligibility is unimpeachable."); Robinson v. Bowen, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) (finding plaintiff lacked standing in a candidacy eligibility challenge because "[n]either [he] nor general election voters" were "in any way prevented [ ] from supporting their preferred candidate").

III.

Because plaintiffs lack standing under Article III of the United States Constitution, defendants' motions to dismiss, [Dkt. Nos. 26, 31], will be granted by an Order that will dismiss plaintiffs' Second Amended Complaint with prejudice.[9] Additionally, the Order will dismiss all

---

[9] Plaintiffs have already filed a Complaint, [Dkt. No. 1], and twice amended it. [Dkt. Nos. 8, 10]. In the September 26, 2023 Order, [Dkt. No. 9], which allowed for the second amendment, the Court explained that plaintiffs exhausted their "final opportunity . . . to file an amended complaint in this civil action." The Court denied plaintiffs' request to amend their complaint for a third time on November 8, 2023, see [Dkt. No. 44]. Accordingly, any further amendment would prove futile and waste judicial and counsels' resources.

12

pending motions as moot and cancel the hearing on defendants' motions to dismiss scheduled for Friday, January 5, 2024 at 10:00 a.m.

Entered this 29th day of December, 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge